IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SUSAN STOCKING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-00421-CV-W-HFS |
| | ) | |
| AT&T CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

As stated in a prior ruling (Doc. 55) plaintiff Susan Stocking has received an EEOC determination that defendant's health care program she had selected contained a restriction that violated her rights as an employee, under Title VII and the Pregnancy Discrimination Act. 42 U.S.C. § 2000e et seq. and 2000e(k). Pursuant to a collective bargaining agreement in effect until July 1, 2002, there was no coverage for contraceptives prescribed for birth control. Such contraceptives thereafter became available for mail-order acquisition under that program.

Plaintiff initially sought damages for her past expenditures for prescribed contraceptives and also an injunction against the new mail-order limitations. Class certification was sought. It was denied without prejudice in the prior ruling because plaintiff was not personally opposed to the mail-order system, and had discontinued her contraceptive use. Plaintiff now limits her complaint to the damage claim (amounting to roughly $1 per day) and renews her request for class certification. Cross-motions for summary judgment on the merits have been filed. Defendant also vigorously contests class certification. The essential facts are not in dispute.

Oral argument and supplemental briefing have recently occurred. For reasons stated below, I will grant plaintiff Stocking summary judgment on the merits but for a limited damage period as advocated by defendant; that is, 300 days before filing of the charge. I will certify a class, with plaintiff as the class representative, for female employees of defendant with similar health insurance who purchased prescribed contraceptives for birth control during the period from October 31, 2001, through the month of June, 2002. Some qualified claimants, like plaintiff herself, will not be entitled to damages for the entire period.

Procedurally it would have been preferable to make a class action determination somewhat earlier. That did not occur because of what I concluded was a false start by plaintiff. Now that the class issues and motions going to the merits are ripe for ruling, I believe I should deal with the merits first, which will help place the request for class certification in clear focus.

I.

Before 2002 AT&T offered plans covering prescribed contraceptives for management employees, but only on a mail-order basis. Certain elective programs, such as an HMO option that was available to non-management personnel like plaintiff, also covered prescribed contraceptives. As stated in my earlier ruling, use of the HMO option would apparently have imposed limitations on health coverage that plaintiff did not want, so she was not interested in submitting to that plan in order to get coverage for prescribed contraceptives. Plaintiff discontinued prescribed contraceptives several months after October, 2001, and now relies on a single purchase for $101.07 for a three-month supply. Defendant has calculated her potential recovery, after a co-pay deduction, of only $68.07.

Because of the class action potential, given that defendant AT&T is a large employer, the small claim here has been strenuously litigated by both sides.

Prior to July, 2002, the exclusion of prescribed contraceptives apparently was treated as a cost-saving device for what the parties to the collective bargaining agreement considered to be nonessential medical treatment. This disregards the sex-related circumstance that the limitation of prescribed contraceptives applies to women only, under current availability conditions, and also disregards the importance of pregnancy or freedom from that condition for women, for health conditions, narrowly defined, and otherwise.

I will not fully rehearse the legal issues because that has been done by several district judges. As least one case is on appeal. I now understand that two unpublished decisions favor defendant employer, but their treatment is rather summary or does not discuss contrary authority, which I now find quite compelling. Alexander v. American Airlines, 2002 WL 731815 (N.D. Tex.); Cummins v. State of Illinois, unreported, Case No. 2002-CV-4201-JPG (S.D. Ill., Aug. 30, 2005). Three more fully reasoned and published decisions favor plaintiff on the discrimination claim. Erickson v. Bartell Drug. Co., 141 F. Supp. 2d 1266 (W.D. Wash. 2001); Cooley v. DaimlerChrysler Corp., 281 F. Supp. 2d 979 (E.D. Mo. 2003); In re Union Pacific R.R. Employment Practices Litigation, 378 F. Supp. 2d 1139 (D. Neb. 2005). A sixth decision rejects the Pregnancy Act claim but allows the case to go forward on a Title VII sex discrimination claim. Wright v. DaimlerChrysler Corp., unreported, Case No. 4:03 CV 1873 CDP (E.D. Mo. Jan. 10, 2005).[1]

---

[1] Years ago it was customary to disregard or devalue unpublished trial court decisions because almost anything can be out there, and there is suspicion that counsel will skew their disclosures to favor their clients–although suppression of adverse authority would be unethical. Published decisions continue to have more weight, in general, because they reflect the significance attached to them by the author.

3

Case 4:03-cv-00421-HFS   Document 126   Filed 06/07/06   Page 3 of 15

In my initial reaction to the issues in this case, I noted some skepticism as to the merits because both men and women use contraceptives, just as both men and women may seek treatment for infertility. The same observation appears in Alexander and Cummins. There is controlling appellate authority that the denial to a woman of fertility treatment cannot give rise to a sound claim for discrimination because of sex, either under Title VII or the Pregnancy Discrimination Act. Krauel v. Iowa Methodist Medical Center, 95 F.3d 674 (8th Cir. 1996). This ruling was distinguished in Cooley and Union Pacific, but has been relied on as a bar to PDA claims regarding prescription contraceptives in Cummins and Wright.

The most thorough consideration of the differences between denying prescription contraceptives to women and men is found in Judge Smith Camp's opinion in Union Pacific. There, in addition to the fact that there are no current prescription contraceptives for men, it was explained that contraception, in preventing paternity, has a major social significance for men but avoidance of pregnancy has both social and physical significance for women. The Circuit in Krauel noted the distinction by stating that "potential pregnancy, unlike fertility, is a medical condition that is sex-related because only women can become pregnant." 95 F. 3d at 680.

It seems worth mentioning that Judge Perry, in Wright, departed from her colleague's ruling in Cooley, based on a rationale going back to Krauel. I am persuaded by Union Pacific, and conclude that we do have a sound Pregnancy Discrimination Act claim here, as well as a soundly alleged Title VII claim (a conclusion consistent with that of Judge Perry in Wright).[2]

---

[2] I acknowledge that conceptually the Title VII claims seems more obviously appropriate than the PDA claim, because the avoidance of pregnancy was somewhat outside the target area of the PDA. Union Pacific makes a persuasive showing, however, that the language of the Pregnancy Act can fairly be read to reach the current subject. The sufficiency of Title VII without the PDA amendment is accepted in Wright, but the problem there is with earlier

4

II.

Defendant contends this entire case is time-barred because the denial of prescription contraceptives was contained in a collective bargaining agreement that it made in 1998, long before the charge was filed here in 2002, and plaintiff did not file a charge although she had notice of the particular restriction at least by January, 2000. AT&T seeks to distinguish the contrary ruling on timeliness in a very recent Eighth Circuit case where women firefighters successfully complained of being required to use specialized clothing designed for men and facilities discrimination that had a long history, but continued into the 300-day period before the charge was filed. Wedow v. City of Kansas City, 442 F.3d 661 (8th Cir. 2006).

Wedow accepts guidance from National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), which greatly modifies pre-existing law regarding so-called continuing violations. The concept was severely restricted, being now only clearly available in hostile work environment cases. Morgan effectively preserves many claims previously rejected on timeliness grounds, but at the same time greatly restricts the period for which damages are available. See Bazemore v. Friday, 478 U.S. 385 (1986), reaffirmed in Morgan and relied on in Wedow.

It is clear, under Wedow, that timely claims can be filed where there are specifically discriminatory working conditions, benefits, wages and the like that may have had a long history but continue into the 300-day period for filing charges. Defendant's principal argument to the contrary in this case is that it took no direct action during the immediate pre-charge period, such as issuing a discriminatory payroll check. But there was no requirement of recent direct action in

---

Supreme Court cases. Unless and until the Circuit speaks differently, I accept Union Pacific on the PDA and Wright on Title VII. We likely will have an appellate ruling before this case is in final judgment.

5

Wedow.  Other situations of discrimination occur that do not require current employer action. Continued inaction suffices in situations like this.  One might also suggest that issuance of a discriminatory paycheck is not the wrong complained of, but rather the failure to make greater payments.  That is essentially what occurred here.

Plaintiff bought and paid for prescription contraceptives on at least one occasion for which a timely charge could be filed.  She sought no reimbursement from defendant or the insurance company in question.  That would clearly have been a futile act, as defendant acknowledges.  A claimant is generally not required to engage in a futile act to preserve a right. Failure to exhaust available remedies is not presented as a defense this case.  The analogy to Wedow seems unmistakable, and I will deny defendant's motion for summary judgment, except as to the damage period.

III.

The parties in their motions ask for different rulings on the period open to plaintiff (and her class, if certified).  Defendant contends that plaintiff is time-barred from claiming expenses of prescription drugs incurred before the 300-day period allowed in Missouri for making charges of discrimination.  Thus, she would have no claim for the time after she stopped using contraceptives and no claim for any uncompensated expenditures before October 31, 2001.  Plaintiff argues that there was a continuing wrong during the entire period of the collective bargaining agreement.

I agree with defendant in its contention that remediable wrongs occurred from time to time when plaintiff made purchases under the discriminatory agreement, but only to the extent such purchases occurred within 300 days of filing the charge.

6

A recent application of the principle involved occurred in <u>Wedow v. City of Kansas City, Mo.</u>, supra. In that case a jury found that women firefighters had been forced to use ill-fitting, cumbersome, and somewhat disabling and potentially dangerous clothing of the type suitable for and supplied to male firefighters. Plaintiffs had also been supplied discriminatory rest-room facilities. Although the discriminatory policies long pre-dated the filing of charges, the complainants were confined to damages occurring during the 300-day limitations period. The Court of Appeals found the claims "akin to the line of cases stemming from <u>Bazemore v. Friday</u>, 478 U.S. 385, 395 (1986)(holding that each week's paycheck that delivers less on a discriminatory basis is a separate Title VII violation)." 442 F. 3d at 671. This has sometimes been referred to as a "serial violation." The Court also relied on the most recent Supreme Court handling of the issue of "continuing violations". <u>National Railroad Passenger Corp. v. Morgan</u>, supra. In using hostile work environment claims as rare examples of continuing violations the Supreme Court emphasized how rarely the concept could be used to avoid the short limitation period created by Congress. Absent the narrow range of cases that fall within a "continuing violation" concept, the Supreme Court emphasized that a "discrete...discriminatory act 'occurred' on the day that it 'happened'. A party, therefore, must file a charge within either 180 or 300 days of the date of the act <u>or lose the ability to recover for it</u>." 536 U.S. at 110. (emphasis added). In rejecting further frequent use of the "continuing violation" theory, the Court referred to the EEOC's advocacy of the concept of "certain serial violations and systemic violations" that would allow a longer period of recovery. The Court stated that such interpretive guidelines must yield to the Supreme Court's role as a final authority. 536 U.S. at 110-1, n.6. Advocacy by plaintiff of these concepts after the <u>Morgan</u> decision is thus unsound.

7

Plaintiff now acknowledges (Doc. 122) that Morgan eliminated the possibility of using serial violations to avoid the 300 day limitation on recoveries. She claims however, that "systemic violations" can still be used. In the previously quoted footnote, the Morgan opinion put both categories in the same basket. Moreover, the violation here, as in Wedow, was clearly of a serial nature, dependent on repeated purchases, even though "systemic" in the sense that employer policies of general application originated the discriminatory conduct. Where, as here, the violation of rights can be broken down into a series of discrete acts, a common source, through company-wide or "systemic policy", does not preserve old claims. See Davidson v. America Online, Inc., 337 F.3d 1179, 1184-6 (10th Cir. 2003).

Plaintiff contends the continuing violation theory is still usable in post-Morgan cases involving discriminatory salary contentions and cites Tademe v. Saint Cloud State University, 328 F. 3d 982, 989 (8th Cir. 2003). That case uses Bazemore language, however, and notes that the claim of discrimination was timely because the charge was filed within 300 days of the last discriminatory pay-checks. There was no occasion to rule or comment on the question of a 300-day cutoff for damages because the Circuit sustained summary judgment for defendant on the merits. Thus Tademe cannot be cited as contrary to the result in Wedow.[3]

Being unable to cite cases decided after Morgan in support of a contention that recovery can be had for events earlier than the 300 days allowed for filing charges, plaintiff falls back on a

---

[3] See another post-Morgan case where a claimant abandoned at oral argument her contention that she could recover in a discriminatory compensation case for a period outside t he 300-day charge filing period. Hildebrandt v. Illinois Dept. of Natural Resources, 347 F. 3d 1014, 1025 (7th Cir. 2003). Taking another tack, plaintiff seeks to distinguish "wage discrimination cases" from this one. Reply Brief, Doc. 109, page 13, note 18. Such cases are, however, closer to this case than a hostile work environment case would be. Wedow is an example.

8

different statute of limitations than the one governing the filing of charges. Civil actions by a person aggrieved by employment discrimination may be filed under 42 U.S.C. §2000e-5(f), which contains no periodic cutoff language for remedies. Another subsection relating to injunctions and equitable relief does contain the following: "Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission". 42 U.S.C. §2000e-5(g)(1). Plaintiff contends the statutory language in itself frees her from the restrictions advocated by defendant.

As stated by the First Circuit some years before Morgan, "By allowing for the possibility of recovering back pay for over a year prior to the 300 day filing period, 'Congress must have envisioned continuing remediable violations that existed prior to the running of the period.'" Sabree v. United Bhd. Of Carpenters and Joiners, 921 F.2d 396, 401 (1st Cir. 1990). Even more compelling, as a pre-Morgan citation, is an opinion by Judge Loken for our Circuit. Ashley v. Boyle's Famous Corned Beef Co., 66 F. 3d 164 (8th Cir. en banc 1995). In that case, on allegations that gender discrimination tainted the plaintiff's rate of pay, the Court ruled that "relief back to the beginning of the limitations period strikes a reasonable balance between permitting redress of an ongoing wrong and imposing liability for conduct long past" 66 F. 3d at 168. A charge was filed in November, 1992 concerning a continuing pay discrimination practice dating back to 1986. It is my understanding of the opinion that it would allow back pay recovery to November, 1990.

If there is conflicting language in Title VII, it seems clear that Morgan resolves the conflict in favor of the shortened recovery period, despite the oddity in drafting that affects remedial relief in injunction cases. While the parties and I do not find substantial appellate court discussion of the issue, the plain language of Justice Thomas in Morgan effectively "eviscerates the continuing violation doctrine outside of hostile environment claims", as contended by the successful defendant

9

in Lewis v. Norfolk Southern Corp., 271 F. Supp. 2d 807, 813 (E.D. Va. 2003). If the Ashley "reasonable balance" is to be reinstated it will require legislation.

Therefore partial summary judgment will be entered in favor of defendant, limiting plaintiff's remedy to uncompensated expenditures for prescription contraceptives subsequent to October 31, 2001.

IV.

Having given up her earlier claim for injunctive relief, plaintiff now seek designation of a class of female employees of defendant seeking damages under Rule 23(b)(3), F.R.Civ.Proc. She needs a finding that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for adjudication of the controversy. As in all class actions there must be satisfaction of the elements of Rule 23(a), which include numerosity making joinder impracticable, questions of law or fact in common, typicality of the claims of the plaintiff as proposed representative, and assurance to the court that plaintiff as a representative would fairly and adequately protect the interests of the class.

Plaintiff's deposition has been taken, with excerpts supplied to the court by counsel. During the course of litigation I have become somewhat familiar with the performance of counsel in this variety of litigation. Defendant basically questions the thoroughness of the record on the class action elements and seeks denial of a class action because members of the class would have so many individualized histories that it would allegedly be very burdensome to develop damage claims with any precision or uniformity.

10

Starting with plaintiff, her motivation is asserted to be the establishment of the rights of women employees of AT&T to nondiscrimination in health care benefits. While arguably much of this interest has become satisfied, as of July, 2002, I am not charged with appraising a claim of overzealous prosecution of litigation which might currently be categorized as an effort to obtain rather nominal damages for a previous violation of rights. The main thing for me to guard against is personal venality or an effort to use the class for personal benefit. That is not inferable and is not claimed by defendant.

Counsel are deemed to be skillful and experienced enough to serve as class counsel, and that is also not a subject of challenge by defendant.

In light of the small damage claim available to each member of the class, it is realistically certain that only a class action could feasibly result in an adjudication of the rights here at stake. The superiority of a class action proceeding is the dominant factor in my determination.

Defendant challenges the showing of numerosity, but I can almost take judicial notice that this is not a serious issue. The basic question to be decided is whether I should require joinder rather than create a class, and that would only be a close question if we were dealing with several dozen or fewer prospective members of that class. That is the significance of numerosity. A distinction needs to be made between prospective class members and likely class members. I cannot predict with any confidence that more than several dozen individuals would choose to remain in the class, given the small stakes and the nuisance involved in reconstructing or remembering medical history enough to specify it under oath. But the question is whether an unmanageable number of persons are prospective members of the class. Compare Cox v. American Cast Iron Pipe Co., 784 F.2d 1546 (11th Cir. 1986).

11

With a very large company like AT&T I must assume a very considerable number of women of child-bearing age would be in non-management positions and would be using birth control, either by relying on a male partner or by themselves. The need for prescription contraceptives for many women would be a matter I can accept as a matter of judicial notice. Even if a large number of employees elected HMOs, where prescription contraceptives were available, it is fair to assume there are a significant number of individuals similarly situated with plaintiff. If the number throughout the country is at least 100-500 that would, in my judgment, be vastly more than would satisfy the numerosity requirement and it seems almost frivolous to question that such figures exist. While the burden is on plaintiff, defendant could doubtless make a good estimate and perhaps has done so. The question is less technical, and more susceptible to ruling as a matter of common knowledge, than the numerical issue in Yong Song Oh v. AT&T Corp. 224 F.R.D. 357 (D. N.J. 2004).

For present purposes I accept numerosity. Common questions exist, and will define the class that would be created. Plaintiff's claims are clearly typical, except for her discontinuance of contraceptives mid-point in the 300 day period. This would create a problem of fairness in using this representative if the members of the class were thereby denied the right to claim damages through the month of June, 2002. Defendant suggests no authorities that would terminate the rights of members simply because plaintiff changed her practice. Members of the class, for better or worse, use their own experiences to establish damages. Members of the class, although personally dilatory in pursuing their $1 a day entitlement, are of course able to use plaintiff's charge to get them into court. Albermarle Paper Co. v. Moody, 422 U.S. 405 (1975). Although that may have given defendant the idea that claimants would be dependent on plaintiff's rights to damages I am satisfied

12

this concept relates only to filing procedure. Because Albemarle allows class members to benefit from plaintiff's standing, plaintiff contends they should not be limited by residing in a state with a 180-day filing requirement.

The weight of authority, however, seems to limit damages for class members living in non-deferral States to injury incurred during the 180 day period prior to filing of a charge on which those claimants can rely. See, e.g., Church v. Consolidated Freightways, Inc., 137 F.R.D. 294, 309-10 (N.D. Cal. 1991) Although I am thus presently inclined to accept defendant's contention as to the controlling time periods, that does not affect class certification or class description. The class description should be inclusive, in my judgment, for the sake of simplicity, with damage limitations for individual claimants to be determined later (if the parties consider that worth the trouble). Just as claimants who, like plaintiff, may have discontinued use of prescription contraceptives during the time-frame established by the charge, and may thus be restricted to a limitation on recoveries, those claimants living in the handful of non-deferral States would simply have a damage limitation imposed. In any event, defendant's contention about non-deferral States would not affect class certification but would at most, favor use of a sub-class.

None of the issues mentioned in Rule 23(b)(3) or 23(a) create problems for creation of a class other than the one defendant emphasizes; that is, the many different histories that individuals in the class are likely to present. Even that issue is, in my judgment, nearly frivolous, in light of the very small sum of money anyone can claim, and the practical strictures that both sides will feel in pursuing and debating such differences. I cannot imagine defendant spending half a day of time in specific discovery or in challenging some individual claim. This might result in some vulnerability to false claims, which is also not an issue before me, but would probably be dealt with through

13

sworn documents relating to claims.[4] The experience in the Union Pacific case, as evidenced in the opinions, confirms my view that the parties, in the interest of practicality, could probably agree on a settlement alternative for individuals that would likely dispose of the bulk of claims. Administrative proceedings have been devised in the railroad case that could simplify things here. Defendant does not adequately respond to that experience, except to say that it was initiated "under a completely different class action standard." This has no bearing on the processing of damage claims. In other words, management of the class action should not predictably be very burdensome–unless one simply resents the expense of litigation.

A class will therefore be certified, with Susan Stocking as representative of the class.

It is therefore ORDERED that plaintiff's motion for summary judgment as to liability is GRANTED, defendant's motion for summary judgment is DENIED, except that it is GRANTED in limiting damages to the period from October 31, 2001 to July 2, 2002, and plaintiff's renewed motion for class certification is GRANTED.

The parties are directed to negotiate a plan for further proceedings pursuant to these rulings and

---

[4] A questionnaire can be worked out that would deal with all issues that might eliminate claims–such as contraceptive users for medical necessity (which was always covered by the program) rather than simply birth control.

14

to propose an agreed order or series of specific orders within thirty days of this date.[5] If unable to agree plaintiff shall file her proposed order(s) on that day and defendant shall file objections and counter proposals within seven days there after. SO ORDERED.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

June 7, 2006

Kansas City, Missouri

---

[5]The parties may of course preserve objections to the above rulings.